UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**MAURICE WOLCOTT**            **CIVIL ACTION NO. 3:24-CV-269**

**VERSUS**            **JUDGE: JACKSON**

**BOARD OF SUPERVISORS OF**        **MAGISTRATE-JUDGE: JOHNSON**
**LOUISIANA STATE UNIVERSITY**
**AND A&M COLLEGE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**JOINT STATUS REPORT**

**A.  JURISDICTION**

This matter was removed from the 19th Judicial District Court by the defendant who asserted Federal question jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

**B.  BRIEF EXPLANATION OF THE CASE**

Plaintiff, Maurice Wolcott:

Mr. Wolcott contends he was discriminated against on account of his gender, male, in violation of La. R.S. 23:301, *et seq.* He contends he was discriminated against in that he was replaced by a less qualified female, was targeted because he is male, was made a scapegoat because he is male, was denied the ability to perform his job, both in person and remotely, was denied transfer, was treated far more harshly than females by LSU under its own Title IX policies and by LSU in its handling of baseless complaints against him, was banned from campus, was relegated to menial and undesirable tasks, and that LSU violated not only Title IX and its own policies, but also admitted to breaking the law as regards the handling of Mr. Wolcott. Mr. Wolcott sent demand pursuant to La. R.S. 23:303(C) in advance of the filing of his lawsuit. Mr. Wolcott also alleges defendant LSU's repeated violations of his rights to due process, under Title IX, and of the law

(which LSU admitted for the first time on August 23, 2023), clearly demonstrate LSU had no legitimate, non-discriminatory/non-retaliatory reason(s) for the actions taken against him and was, instead, motivated by his gender, male, and reprisal.

Mr. Wolcott contends he was defamed by LSU and deliberately placed in a false public light in that he was falsely accused of sexual harassment and illegal retaliation. He contends the false and defamatory statements were published by LSU to faculty (despite its own requirement that the allegations remain "confidential"), students, employees of Sea Grant (a NOAA agency), and the public. At paragraph 23b, Mr. Wolcott identifies to whom defamatory statements were disseminated. Mr. Wolcott asserts the publications were in bad faith and were made despite knowing the statements to be false. He specifically attests to both direct and circumstantial evidence supporting his claims of publication of defamatory material and identifies the defamatory words spoken, i.e., that he had sexually harassed female students and unlawfully retaliated against a female student. He contends publication has continued to occur from 2021 to the present, but specifically, identifies publications on January 30, 2024, and as admitted by Alan Rutherford, his Department Head, that LSU widely disseminated and is continuing to disseminate the defamatory materials at least as of March 27, 2024. He contends the defamation is continuing and seeks damages, including for the loss of his reputation and standing in the community.

Lastly, Mr. Wolcott contends he has been subjected to unlawful reprisal in violation of La. R.S. 23:967. He contends, under La. R.S. 23:967(2) and (3), he engaged in protected activity by testifying during his injunction hearing on August 23, 2023, before the 19th Judicial District Court, Division "21". Those proceedings, sought and obtained an injunction against LSU from proceeding with any further consideration or hearing, of any kind, regarding Petitioner and the allegations made through and by defendant against Petitioner, from imposing discipline, of any

kind, or suspending, dismissing, or taking action against Petitioner." The injunction suit, filed by Mr. Wolcott, alleged LSU had violated Title IX, his Constitutional rights, and the law regarding the sexual harassment and retaliation allegations. Mr. Wolcott identified his protected activities under La. R.S. 23:967 as his testimony on August 23, 2023, that LSU violated Title IX, his rights to due process under the Louisiana Constitution and the United States Constitution, the filling of his injunction lawsuit, and his repeated objections to LSU's Title IX proceeding as it related to him specifically because it was in violation of the law. Mr. Wolcott detailed the identified violations of the law and facts relating thereto and that he confirmed LSU had violated the law on August 23, 2023, during the injunction trial and specifically, in the testimony of Jones who admitted LSU had done so. He contends that following his engagement in protected activities, he was denied the ability to return to his job in August, 2023, was denied the ability to move to another job at Sea Grant in January, 2024, and was relegated to undesirable reassignments/menial tasks in August, 2023. He contends those actions were taken by LSU in reprisal for his protected activities under La. R.S. 23:967(2) and (3).

He seeks compensatory damages under La. R.S. 23:301, *et seq.*, for defamation, and under La. R.S. 23:967. He also seeks attorney fees, all costs, judicial interest, and all such other afforded him under Louisiana law.

Defendant's claims:

Plaintiff, Maurice Wolcott ("Wolcott" or "Plaintiff"), is currently employed by LSU as an Instructor and Extension Specialist within the School of Renewable Natural Resources in the LSU College of Agriculture. On February 26, 2024, Wolcott filed suit against LSU in the 19th Judicial District Court, Parish of East Baton Rouge asserting claims arising out of LSU's investigation of two Title IX complaints lodged against Wolcott by former students. More specifically, in his

original Petition, Wolcott claims that LSU falsely published that he was guilty of sexual harassment and thereafter relegated him to menial assignments, banned him from campus and denied him the right to transfer to other departments at LSU.  In his original Petition, Wolcott sought to hold LSU liable for violating his rights to due process under both the federal and state constitutions, violating his rights pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. §1681, et seq ("Title IX") and for claims of defamation and false light invasion of privacy.  (Doc. 1-1.)

On April 4, 2024, Defendant removed Plaintiff's lawsuit to this Court on the basis of federal question jurisdiction.  Specifically, Plaintiff asserted federal claims arising under Title IX and the 14th Amendment to the U.S. Constitution.  (Doc. 1-1.)  On May 10, 2024, Wolcott filed a motion for leave to amend his lawsuit.  (Doc. 13.)  This motion remains pending.  However, in his Supplemental, Amending and Restated Complaint ("Amended Complaint"), Plaintiff seeks to add claims of gender discrimination pursuant to the Louisiana Employment Discrimination Law, La. R.S. 23:301, et seq. and claims of reprisal pursuant to the Louisiana Whistleblower Statute, La. R.S. 23:967.  (Doc. 13-1.)  It appears from the Amended Complaint that Plaintiff is no longer asserting a claim for Title IX or due process violations.  Nonetheless, Plaintiff contends that LSU violated Title IX and his due process rights and that these alleged violations against him are proof that he was discriminated against on the basis of his gender.

By way of background, Wolcott began working for LSU in 1998.  He currently serves as an Instructor and Extension Specialist within the School of Renewable Natural Resources in the LSU College of Agriculture.  On or about November 2, 2020, a student ("Student No. 1") filed a Title IX complaint against Plaintiff.  The complaint was investigated by LSU's Title IX Office and ultimately dismissed.  Almost one year later, on or about October 2, 2021, Student No. 1 filed an appeal with LSU's Title IX office based on a procedural issue.  Following Title IX guidelines, LSU

granted the appeal. Shortly thereafter, on October 26, 2021, another student ("Student No. 2") filed a complaint against Wolcott. LSU's Title IX office began to investigate the allegations reported by Student No. 2. In the meantime, Student No. 1 made an additional complaint to LSU's Title IX office that she felt Plaintiff was engaging in retaliatory behavior. She reported an incident where she saw Wolcott in a hallway and felt that he purposely remained in the area in order to intimidate her. LSU included this additional concern in its Title IX investigation.

In connection with the October 2021 Title IX complaints, LSU's Title IX office issued a "No Contact" Order to Wolcott with respect to Student No. 1 and Student No. 2 during the pendency of the investigation.

By January 2022, Wolcott requested, and was approved for, FMLA leave for knee surgery which lasted from January 10, 2022 until April 3, 2022.

While Wolcott was taking FMLA leave, LSU's Title IX office issued a report with respect to Student No. 1's complaint and notified Wolcott that a hearing would be scheduled for March 25, 2022. On April 4, 2022, Plaintiff filed a Petition for Temporary Restraining Order and Injunctive Relief in the 19th Judicial District Court seeking to prevent the hearing from taking place. After a hearing on the merits, a preliminary injunction was signed by the state court on September 21, 2023 preventing LSU from moving forward with the hearing. LSU did not appeal and no hearing took place.

After Plaintiff's FMLA leave expired, Wolcott requested and was allowed to telework as part of his recovery from surgery. Wolcott was then allowed to work at the Burden Museum and Gardens until such time as he was able to return to teaching. To this day, Wolcott remains on staff, in his same position, at his same rate of pay. He is scheduled to resume teaching in the fall.

Defendant denies that Plaintiff's due process rights have been violated. Defendant denies that it engaged in conduct in violation of Title IX. On the contrary, LSU avers that its conduct with respect to the investigation and response to the Title IX complaints filed by Student No. 1 and Student No. 2 was both mandated by and in compliance with Title IX.

Defendant further denies that it published any statements of a defamatory nature about Plaintiff or made any statements that placed Plaintiff in a false light. Defendant avers that any communications relating to Plaintiff were made to individuals who had a corresponding need to know and, therefore, any such communications were subject to a qualified privilege.

Defendant denies that it discriminated against Plaintiff on the basis of gender in violation of the Louisiana Employment Discrimination Law, La. R.S. 23:301, et seq. Plaintiff cannot establish that he was subjected to an adverse employment action within the meaning of the LEDL or that similarly situated female employees were treated more favorably in nearly identical circumstances.

Plaintiff also claims that he was subject to reprisal in violation of the Louisiana Whistleblower Statute, La. R.S. 23:967. Plaintiff's reprisal claim fails because he cannot establish that he disclosed an actual violation of state law by LSU or that he suffered reprisal as a result any such disclosure.

C. **PENDING MOTIONS**

Defendant's Rule 12(b)(6) Motion to Dismiss, which was opposed by Mr. Wolcott. (Doc. 10.) Mr. Wolcott's Unopposed Motion for Leave to File Supplemental, Amending, and Restated Petition. (Doc. 13.)

D. **ISSUES**

1. Whether Mr. Wolcott was discriminated against on account of his gender, male.

2. Whether Mr. Wolcott was defamed by the false accusation of sexual harassment and illegal retaliation.

3. Whether any allegedly defamatory statements made by Defendant are subject to a qualified privilege.

4. Whether Mr. Wolcott was subjected to unlawful reprisal on account of his protected activities under La. R.S. 23:967.

5. Whether Mr. Wolcott is entitled to an award of damages and the amount(s) thereof.

6. Whether Mr. Wolcott failed to mitigate his damages.

7. Whether some or all of Mr. Wolcott's claims are prescribed.

E. **DAMAGES**

Plaintiff:

Mr. Wolcott seeks compensatory damages in an amount to be determined by the trier of fact, attorney fees which continue to accrue, costs and litigation expenses, and judicial interest.

Defendant:

Defendant denies that Plaintiff is entitled to an award of damages, or a judgment of any kind. Further, if after discovery, it appears that Plaintiff has failed to mitigate his damages, Defendant will seek to offset Plaintiff's damages by any amount caused by the failure to mitigate. Since discovery has not yet begun, Defendant is unable to ascertain the precise amount of any offset at this time.

Counterclaimant/cross claimant/third party's calculations of damages: n/a

F. **SERVICE**

No unresolved issues.

G. **DISCOVERY**

1. Initial Disclosures:

    A. Have the initial disclosures required under FRCP 26(a)(1) been completed?

    [ ] YES          [ X ] NO

    In accordance with Local Rule 26(b), the parties shall provide their initial disclosures to the opposing party no later than 7 days before the date of the scheduling conference, unless a party objects to the initial disclosures during the FRCP 26(f) conference and states the objection below.

    B. Do any parties object to initial disclosures?

    [ ] YES          [ X ] NO

    For any party who answered *yes*, please explain your reasons for objecting.

2. Briefly describe any discovery that has been completed or is in progress:

    By plaintiff(s):

    None.

    By defendant(s):

    Defendant respectfully objects to engaging in discovery until the pending Motion to Dismiss (Doc. 10) and Motion for Leave (Doc. 13) are decided.  If Defendant's motion to dismiss is granted in whole or in part, it will significantly narrow the scope of issues to be litigated.  If Plaintiff's motion for leave is granted, new claims may be added to the litigation.

3. Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery.

    By plaintiff(s):

Plaintiff may seek a Protective Order regarding his medical records, his tax records as he files jointly with his wife, and redaction of private information including his Social Security Number.

<u>By defendant(s)</u>:

Defendant may file a motion for protective order to protect from public disclosure any non-public records including medical records of plaintiff, financial records of plaintiff, records protected by FERPA, or potentially privileged or confidential records of other non-parties, including students.

4. Discovery from experts:

Identify the subject matter(s) as to which expert testimony will be offered:

<u>By plaintiff(s)</u>:

Plaintiff may offer testimony from his treating healthcare provider regarding emotional distress.

<u>By defendant(s)</u>:

Defendant may retain experts in one or more of the following areas: economic, vocational, Title IX, or mental health.

H. **PROPOSED SCHEUDLING ORDER**[1]

1. If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline: July 20, 2024

2. Recommended deadlines to join other parties or to amend the pleadings: August 1, 2024

---

[1] The proposed scheduling order must include actual calendar dates rather than time periods that require calculation (e.g. March 21, 2017 not 90 days before pretrial conference.

3. Filing all discovery motions and completing all discovery except experts: December 15, 2024

4. Disclosure of identities and resumés of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

    Plaintiff(s): October 14, 2024

    Defendant(s): November 14, 2024

5. Exchange of expert reports:

    Plaintiff(s): November 14, 2024

    Defendant(s): December 14, 2024

6. Completion of discovery from experts: January 15, 2025

7. Filing dispositive motions and Daubert motions: February 15, 2025

8. All remaining deadlines and pre-trial conference and date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters. [2] The parties should not provide any proposed dates for these remaining deadlines.

    a. Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

    b. Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

---

[2] The date ranges provided for the new deadlines, pre-trial conference, and trial date are a general guideline only. The actual dates may vary depending on the complexity of a particular case. All requests for subsequent changes to the deadlines set in the scheduling order under paragraph numbers 7 or 8 must be by motion directed to the presiding judge.

  c. Deadline to file responses to motions in limine (approximately 22-24 weeks after dispositive motion deadline).

  d. Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

  e. Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

  f. Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

  g. Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

## I. TRIAL

1. Has a demand for trial by jury been made?

    [ X ] YES   [ ] NO

2. Estime the number of days that trial will require. 3-4 days

## J. OTHER MATTERS

Are there any specific problems the parties wish to address at the scheduling conference?

    [ ] YES   [ X ] NO

  i. If the answer is *yes*, please explain:

  ii. If the answer is no, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in

this report?   **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.**

[ X ] YES        [ ] NO

**K. SETTLEMENT**

1. Please set forth what efforts, if any, the parties have made to settle this case to date.

2. Do the parties wish to have a settlement conference:

[X ] YES (by plaintiff)        [ ] NO

If your answer is *yes*, at what stage of litigation would a settlement conference be most beneficial?

By plaintiff: prior to the expenditure of significant sums on depositions especially given that several of defendant's witnesses and the plaintiff testified during the Injunction proceeding.

By Defendant: Defendant believes that a settlement conference would be most beneficial following a ruling on any dispositive motions that are filed.

**L. CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United State District Judge and may instead consent to proceed before a United States Magistrate Judge.

Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:

[ ] YES        [ X ] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresented parties should sign the attached form to indicate your consent.**

Report dated: June 19, 2024.

                                        Respectfully Submitted,

                                        By: ___s/Jill L. Craft_____
Jill L. Craft, T.A., La. Bar Roll No. 20922
W. Brett Conrad, Jr., La. Bar Roll No. 37639
329 Saint Ferdinand Street
Baton Rouge, Louisiana 70802
Phone: (225) 663-2612
jcraft@craftlaw.net
bconrad@craftlaw.net
*Attorneys for the Plaintiff*